**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

|  |  |  |
|---|---|---|
| **DIANNA J. LEWIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CBD-10-667** |
| | ) | |
| **MICHAEL J. ASTRUE,**[1] | ) | |
| **Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Dianna J. Lewis, ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's claim for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (ECF No. 28) and Commissioner's Motion for Summary Judgment ("Commissioner's Motion") (ECF No. 33). The Court has reviewed the motions, related memoranda, and the applicable law.  No hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md.).  For the reasons presented below, the Court hereby DENIES Plaintiff's Motion, and GRANTS Commissioner's Motion.

## PROCEDURAL BACKGROUND

Plaintiff filed for disability benefits on May 18, 2007.  R. 56.  The Commissioner denied Plaintiff's claim on first review on September 14, 2007, R. 58-61, and on reconsideration on

---

[1] Subsequent to the commencement of this litigation, Michael J. Astrue has been replaced as Commissioner of the Social Security Administration by Acting Commissioner Carolyn W. Colvin.  United States Social Security Administration, Fact Sheet, http://www.ssa.gov/pressoffice/factsheets/colvin.htm (last visited April 29, 2013).

January 4, 2008.  R. 69-70.  A hearing was held before an Administrative Law Judge ("ALJ") on March 11, 2009.  R 19-55.  On July 29, 2009, the ALJ issued a written decision concluding that Plaintiff was not disabled under the Social Security Act.  R. 9-18.

The ALJ evaluated Plaintiff's claim using the five-step sequential process set forth in 20 C.F.R. § 404.1520 (2008), and further explained below.  At the first step, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since August 19, 2005, the alleged onset date.  R. 11.  At the second step, the ALJ determined that Plaintiff has the following severe impairments:  chronic obstructive pulmonary disease ("COPD"), non-insulin dependent diabetes mellitus, obstructive sleep apnea, and obesity.  *Id.*  The ALJ found that Plaintiff's plantar fasciitis, hepatomegaly of the liver, peripheral vascular disease, and depression did not qualify as severe impairments.  R. 12-13.  At the third step, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals" a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 13.  The ALJ stated that he considered the possible effects of Plaintiff's obesity in evaluating the severity of her conditions.  *Id.*  At the fourth step, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except that she could do no climbing of ladders, ropes, or scaffolds; she could only occasionally perform other postural maneuvers (including climbing stairs or ramps, balancing, stooping, kneeling, crouching, or crawling); would have to avoid concentrated exposure to temperature extremes, fumes, and other environmental irritants; and would have to avoid even moderate exposure to hazards (such as unprotected heights or moving machinery).  R. 13-16.  The ALJ found that Plaintiff is unable to perform any of her past relevant work as a janitor, custodian, or factory worker.  R. 16.  At the fifth step, the ALJ determined that considering Plaintiff's residual functional capacity, age, education, and work experience, "there

2

are jobs that exist in significant numbers in the national economy that the claimant can perform," including bench assembler, sales attendant/greeter, and router. R. 17. As a result, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from the alleged onset date of August 19, 2005, through the date of the decision. R. 18.

Plaintiff subsequently requested review of the ALJ's decision by the Appeals Council. R. 4-5. The Appeals Council denied Plaintiff's request on February 2, 2010, making the ALJ's decision final and appealable. R. 1-3.

## STANDARD OF REVIEW

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2006). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); s*ee also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted); *see also Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456; *Schweiker*, 795 F.2d at 345. The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456. If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is deemed legally disabled if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) (2011). The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If she is doing such activity, she is not disabled.

2) If she is not doing such activity, determine whether she has a "severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii). If she does not have such impairment or combination of impairments, she is not disabled.

3) If she does have such impairment or combination of impairments, determine whether she has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii). If she does have such impairment, she is disabled.

4) If she does not, considering her residual functional capacity, determine whether she can do her "past relevant work." 20

C.F.R. § 404.1520(a)(4)(iv).  If she can do such work, she is
not disabled.

5) If she cannot do such work, considering her residual functional
capacity, age, education, and work experience, determine
whether she can perform other work.  20 C.F.R. §
404.1520(a)(4)(v).  If she can perform other work, she is not
disabled, and if she cannot, she is disabled.

Plaintiff has the burden to prove that she is disabled at steps one through four, and

Defendant has the burden to prove that Plaintiff is not disabled at step five.  *Pass v. Chater*, 65

F.3d 1200, 1203 (4th Cir. 1995) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

## ANALYSIS

On appeal, Plaintiff argues that the Court should reverse the Commissioner's decision or

remand the case for additional consideration and evaluation of Plaintiff's condition for the

following three reasons:

1) The ALJ failed to properly consider Plaintiff's obesity at each
step of the sequential evaluation process;

2) The ALJ failed to support his assessment of Plaintiff's residual
functional capacity with sufficient narrative discussion; and

3) The ALJ failed to properly weigh the opinion of Plaintiff's
treating physician, Dr. Vincent Cantone.

## I.  The ALJ Sufficiently Considered Plaintiff's Obesity Throughout The Sequential Evaluation Process.

Plaintiff argues that the ALJ failed to consider the effect of her obesity on her other

impairments at steps two through five of the sequential evaluation of disability.  Pl.'s Br. 5.  The

regulations require the Commissioner to consider the additional and cumulative effects of a

claimant's obesity throughout the evaluative process.  20 C.F.R. Part 404, Subpart P, Appendix 1

§ 1.00(Q); *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 270 (D. Md. 2003).  At step three, obesity

may exacerbate coexisting and related impairments to the degree that in combination they meet a

listing.  SSR 02-1P, 2000 WL 628049, at *1,5 (Sept. 12, 2002). [2]  At steps four and five, obesity

may diminish residual functional capacity by limiting a claimant's ability to perform routine

movements or engage in physical activity in the workplace.  *Id.* at *6.  The Commissioner has

identified conditions especially likely to be exacerbated by obesity, including respiratory

disorders and the fatigue caused by sleep apnea.  *Id.* at *1, 5-6.  However, the Commissioner

does not presume that obesity has such deleterious effects, but rather looks to the record as a

whole to ascertain its impact on the claimant.  *Id.* at *6.  At steps two through four, the burden

remains on claimants to show how obesity imposes limitations beyond those caused by other

impairments.  *George v. Astrue*, No. 10-2165, 2013 WL 877120, at *2 (D. Md. Mar. 7, 2013);

*Dunn v. Comm'r, Soc. Sec. Admin.*, No. 11-2217, 2013 WL 822383, at *3 (D. Md. Mar. 4, 2013);

*Jones v. Astrue*, No. 09-2314, 2010 WL 4923294, at *6 (D. Md. Nov. 29, 2010).  The ALJ is not

required to engage in conjecture or assumptions about the effect of a claimant's obesity.  *See*

SSR 02-1P, 2000 WL 628049, at *6.

    Several district courts in the Fourth Circuit have found harmless error in an ALJ's failure

to address a claimant's obesity, concluding that the consideration is implicit where the ALJ cites

to medical records that themselves discuss the claimant's weight.  *See Lehman v. Astrue*, No. 10-

2160, 2013 WL 687088, at *7 (D. Md. Feb. 22, 2013); *Moss v. Astrue*, No. 2:11-CV-44, 2012

WL 1435665, at *6 (N.D.W. Va. Apr. 25, 2012); *Smith v. Astrue*, No. 8:10-CV-2624-CMC-JDA,

2012 WL 786944, at *16 (D.S.C. Jan. 18, 2012).  The Fourth Circuit has not adopted this

approach, and this Court is concerned that it contravenes the well-accepted requirement that

ALJs sufficiently explain and support all material findings and conclusions.  *Durham v. Apfel,*

No. 99-1451, 2000 WL 1033060, at *5 (4th Cir. 2000); *Gordon v. Schweiker*, 725 F.2d 231, 235-

---

[2] Although not required by statute, the Commissioner publishes the Social Security Rulings which are binding on all components of the Social Security Administration.  They represent precedent, final opinions, and statements of policy which the Commissioner has adopted.  20 C.F.R. § 402.35(b)(1) (2012).

36 (4th Cir. 1984); *see infra* Part II (addressing narrative discussion requirement). Nonetheless, harmless error analysis is not required where the ALJ explicitly discusses obesity while relying on medical records that address the claimant's weight.

This Court has reversed and remanded where the ALJ failed to consider whether obesity is a severe impairment at step two, or failed to properly address the effect of the claimant's obesity on the severity of her other impairments. *See Stemple v. Astrue*, 475 F. Supp. 2d 527, 539-40 (D. Md. 2007); *Boston v. Barnhart*, 332 F. Supp. 2d 879, 885 (D. Md. 2004). At subsequent stages of the sequential process, this Court has remanded where the ALJ failed to address obesity altogether or did so only with conclusory, unsupported statements. *A.O.D. v. Astrue*, No. 09-2757, 2010 WL 4904463, at *7 (D. Md. Nov. 24, 2010); *Fleming*, 284 F. Supp. 2d at 271-72.

Here, the ALJ addressed Plaintiff's obesity at each step of the sequential process. At step two the ALJ found that obesity was one of Plaintiff's severe impairments, and referenced reports by two of Plaintiff's treating physicians regarding her weight. R. 11-12. At step three, the ALJ stated that he evaluated the possible effects of obesity in assessing whether Plaintiff's impairments met or equaled a listing. R. 13. At steps four and five, the ALJ discussed the effect of Plaintiff's obesity on her mobility and cited to medical records and reports provided by Dr. Vincent Cantone that address her weight issues. R. 15-16, 387-400. The ALJ addressed the effects of symptoms such as fatigue from sleep apnea and shortness of breath which are partially caused by her obesity. R. 15-16. The ALJ specifically referenced Plaintiff's obesity in assigning postural limitations as part of his residual functional capacity determination. R. 16. Finally, Plaintiff has not pointed the Court to anything in the record suggesting additional obesity-imposed limitations that were not considered by the ALJ. *See George,* 2013 WL 877120, at *2

(affirming ALJ where plaintiff failed to demonstrate how her obesity affects her ability to work); *Dunn*, No. 2013 WL 822383, at *3 ("Because Ms. Dunn has not identified how her obesity limited her to a greater extent than the ALJ found, she has failed to carry her burden."). While some of the ALJ's statements regarding obesity are borderline conclusory, the opinion was not so deficient as to warrant remand. The ALJ's repeated references to Plaintiff's obesity and specific reliance on it in formulating her RFC is sufficient to meet the substantial evidence standard. *See Simmons v. Comm'r, Soc. Sec.*, No. 10-2135, 2011 WL 3880413, at *8 (D. Md. Aug. 30, 2011) (finding an opinion that mentioned obesity in the RFC determination and referred to SSR 02-1p to be sufficient); *Jones*, 2010 WL 4923294, at *7 (finding adequate consideration of obesity where the RFC determination identified specific limitations caused by it).

## II.  The ALJ Provided Sufficient Narrative Discussion To Support His Residual Functional Capacity Determination.

Plaintiff argues that the ALJ failed to include a narrative discussion to explain how the evidence supported his residual functional capacity determination. Pl.'s Br. 11. The Administrative Procedure Act ("APA"), which applies to all federal administrative agencies, requires ALJs to state their "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c)(3) (2012); *see also Brown ex rel. McCurdy v. Apfel*, 11 F. App'x 58, 59 (4th Cir. 2001) (stating that the Social Security Act and the APA require ALJs to "include an explanation of what evidence, or inferences drawn therefrom, were relied on in arriving at a decision"). The Social Security Rulings require ALJs to provide a narrative discussion "describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2,

1996).  The RFC assessment must always consider and address medical source opinions and explain why any opinion conflicting with the RFC assessment was not adopted.  *Id.*

Plaintiff first argues that "nowhere within [the opinion] did the ALJ ever identify the medical and non-medical evidence upon which he relied to support his residual functional capacity assessment."  Pl.'s Br. 11.  Quite to the contrary, the ALJ's opinion included substantial narrative discussion of the medical and non-medical evidence relied on in reaching his RFC assessment.  As discussed in greater detail below in Section III, the ALJ relied on reports from treating physicians that categorize her COPD as mild in severity.  R. 16.  The reports suggest that her sleep apnea can be controlled by use of a "C-PAP" machine[3] and assess her as having full strength, normal muscle tone, and normal sensations and reflexes in her lower extremities.  R. 13-15.  The ALJ also identified specific evidence from Plaintiff's own reports and hearing testimony that he found inconsistent with the alleged severity of her conditions.  R. 15.  The ALJ provided sufficient narrative descriptions to support his RFC findings.

Plaintiff next argues that the case should be remanded due to the ALJ's failure to mention the RFC assessment of a non-examining, non-treating state agency consultant, Dr. Brahim.  Pl.'s Br. 11-12.  While the ALJ is not required to recount every piece of evidence in the written opinion, remand is warranted where the ALJ's decision does not mention important material evidence.  *Boston v. Barnhart*, 332 F. Supp. 2d 879, 889-90 (D. Md. 2004).  The ALJ is not bound by findings made by state agency consultants, but "may not ignore these opinions and must explain the weight given to the opinions in their decisions."  SSR 96-8p, 1996 WL 374184, at *2-3.

---

[3] A C-PAP or continuous positive airway pressure machine is a common treatment for sleep apnea.  *CPAP Machines: Tips for Avoiding Ten Common Problems*, Mayo Clinic (Nov. 15, 2011), http://www.mayoclinic.com/health/cpap/SL00017.

The Court is not convinced that the ALJ's failure to explicitly mention Dr. Brahim's RFC assessment is a failure to consider material evidence warranting remand. Plaintiff asserts that Dr. Brahim's assessment limited her to sedentary work, and therefore qualified her for disability as of her 50th birthday, which occurred approximately one month before the ALJ's decision. Pl.'s Br. 12. However, Plaintiff does not cite any evidence for the proposition that Dr. Brahim's RFC assessment limits her to sedentary work. In fact, Dr. Brahim's findings that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand for at least two hours and sit for about six hours in an eight hour work day, and engage in unlimited pushing and pulling of controls are fully consistent with the ALJ's conclusion that she can perform light work.[4] R. 338. This is especially true considering that the jobs identified by the vocational expert as appropriate for Plaintiff allow for alternating sitting and standing at will. R. 17, 50. Further, Dr. Brahim never treated or examined Plaintiff and reviewed medical evidence only up to August of 2007. R. 338-39. Dr. Brahim did not have access to important subsequent medical evidence relied on by the ALJ, such as the treatment notes of Dr. Carmen Zaldivar and Dr. Cantone through February of 2009. R. 15-16, 387-403. It was proper for the ALJ to instead base his conclusions on the evidence provided by physicians who treated and examined Plaintiff. *See* SSR 96-6P, 1996 WL 374180, at *2-3 (July 2, 1996) (ruling that state agency consultants "can be given weight only insofar as they are supported by evidence in the case record," such as when they have access to additional evidence not available to the treating physicians). Therefore, Dr. Brahim's assessment is not important material evidence requiring remand for further consideration.

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567 (2008).

**III.  The ALJ Properly Weighed The Opinion Evidence Provided By Plaintiff's Primary Care Physician.**

Plaintiff argues that the ALJ improperly rejected the opinion of her treating physician, Dr. Cantone, in determining that she can do light work.  The regulations require the Commissioner to give more weight to the opinions of treating sources, since they are "most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations."  20 C.F.R. § 404.1527(d) (2008).  First, the ALJ is required to give the treating physician controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in your case record."  *Id*.  If the ALJ finds that the treating physician's opinion is not entitled to controlling weight, the following factors must be applied to determine its proper weight: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion with relevant medical evidence; (4) its consistency with the record as a whole; and (5) whether it is the opinion of a specialist regarding his or her area of specialty.  20 C.F.R. § 404.1527(d)(2)-(6) (2008).  The Social Security Rulings emphasize that even when a treating source is not entitled to controlling weight it is still entitled to deference and must be weighed using all of the factors.  SSR 96-2P, 1996 WL 374188, at *4 (July 2, 1996).

A physician with an ongoing and intensive treating relationship is likely to understand a patient's condition in a manner that cannot be replicated by a one-time evaluation or a case record review.  *See* 20 C.F.R. § 404.1527(d)(2)(i) (2008) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").  However, certain determinations are

always reserved to the Commissioner because they are administrative findings and are dispositive of the case. 20 C.F.R. § 404.1527(e) (2008). These include opinions that a claimant is disabled, whether an impairment meets or equals a listing, a claimant's residual functional capacity, and the application of vocational factors. *Id*.

Dr. Cantone submitted a residual functional capacity assessment indicating that Plaintiff could lift or carry a maximum of ten pounds occasionally, could stand for twenty minutes at a time and sit for thirty minutes at time, could not walk one city block without having to rest, could sit/stand/walk for less than two hours in an eight-hour work day, experiences pain severe enough to constantly interfere with her concentration, could be expected to miss work more than three times per month, and would be able to use her hands but unable to use her feet for pushing and pulling of controls. R. 405-408. These findings are assessments of residual functional capacity which are reserved to the Commissioner. Nonetheless, the ALJ must evaluate the medical opinions underlying the physician's conclusions and assign weight according to the factors listed above. *Battle v. Astrue*, No. 09-3281, 2011 WL 4048525, at *1 (D. Md. Sept. 8, 2011)

The ALJ relied mostly on factors three (supportability with medical evidence) and four (consistency with the record as a whole) in assigning limited weight to Dr. Cantone's medical opinions. R. 15-16. *See Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."). The ALJ found that Dr. Cantone's opinion was not entitled to controlling weight because it is not well-supported by medically acceptable clinical and laboratory techniques. R. 16. In fact, Dr. Cantone's records do not include any medical or laboratory testing, and appear to rely mostly on Plaintiff's self-reported symptoms. *See Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (affirming an ALJ's rejection

of a treating physician's diagnosis where it was based on self-reported symptoms and not laboratory testing).  The ALJ found that Dr. Cantone's findings were inconsistent with other substantial medical evidence in the record, such as the findings of treating physicians Dr. Johny Alencherry and Dr. Kalim Ahmed that Plaintiff's COPD was "mild" or "questionable" based on pulmonary function testing, that her chest was consistently clear to auscultation,[5] and that she lacked evidence of episodes of severe respiratory distress after her brief hospitalization in May of 2007.  R. 16, 299, 301, 323, 368.  The ALJ found Dr. Cantone's RFC assessment was inconsistent with testing performed by Dr. Zaldivar indicating that claimant had full strength in her lower extremities (five on a five-point scale), normal strength and reflexes, and normal muscle tone.  R. 15, 401-03.  The ALJ discounted Plaintiff's reports of "uncontrollable fatigue" by citing evidence that Plaintiff's sleep apnea can be controlled by use of a C-PAP machine.  R. 15, 29, 410.  The ALJ also found that the limitations reported by Dr. Cantone were inconsistent with Plaintiff's self-reported activities, such as her involvement in church activities and ability to perform household chores, travel alone, shop for groceries, and drive occasionally.  R. 15, 35-37, 254-55.  The ALJ had substantial evidence for his decision to assign limited weight to Dr. Cantone.

As to factors one and two involving the length, frequency, and duration of the treating relationship, the ALJ's opinion was somewhat lacking in clarity but not so deficient as to warrant remand.  A formulaic recitation of the § 404.1527(d) factors is not required so long as it is apparent that the ALJ was aware of and considered each factor.  *Hooks v. Astrue*, No. 11-423, 2012 WL 2873944, at *8 (D. Md. July 12, 2012); *see also Burch v. Apfel*, 9 F. App'x 255, 259-60 (4th Cir. 2001).  The ALJ should have more explicitly discussed the fact that Dr. Cantone treated

---

[5] Auscultation is the act of listening to the sounds of various body structures (in this case the lungs) as a diagnostic method.  Stedman's Medical Dictionary 170 (27th ed. 2000).

Plaintiff on a monthly basis from May 2007 to February 2009.  *See* R. 299-301, 387-400.

Nonetheless, the opinion reflects that the ALJ was aware of and reviewed Dr. Cantone's

treatment notes from 2007 through 2009, and considered his role in treating her for COPD after

her hospitalization in 2007.[6]  R. 11, 15.  Therefore, while the ALJ failed to explicitly "check-off"

the § 404.1527(d) factors as he considered them, his evaluation of Dr. Cantone's opinion was

satisfactory.  *See Hooks*, 2012 WL 2873944, at *9 (citing *Overcash v. Astrue*, No. 5:07–CV–123,

2010 WL 5904394, at *6 (W.D.N.C. May 21, 2010) ("While an ALJ's decision need not

explicitly discuss each factor, it must justify the amount of weight afforded with specific

reasons."); *Hendrix v. Astrue*, No. Civ.A 1:09–01283, 2010 WL 3448624, at *3 (D.S.C. Sept. 1,

2010) ("[A]n express discussion of each factor is not required as long as the ALJ demonstrates

that he applied the § 404.1527(d) factors and provided good reasons for his decision."); *Clay v.

Astrue*, No. 2:08CV25, 2009 WL 62261, at *20 (N.D.W. Va. Jan. 9, 2009) ("[W]hile the ALJ did

not explicitly and specifically reference every factor enumerated in § 404.1527(d)(2) . . . he

summarized almost the entire medical record before him . . . [and] properly determined that the

opinions of [the treating physicians] were not entitled to great weight.")).

## CONCLUSION

Based on the foregoing, the Court DENIES Plaintiff's Motion and GRANTS

Commissioner's Motion.


April 29, 2013                                    /s/
                                          _____
                                          Charles B. Day
                                          United States Magistrate Judge

CBD/ISA

---

[6] The ALJ's opinion initially states that Plaintiff was treated by Dr. Cantone "from May 7, 2007 through June 21, 2007" for COPD.  R. 11.  However, the opinion later references Dr. Cantone's notes from 2008, indicating that the ALJ in fact considered medical evidence covering the duration of the treatment relationship.  R. 15.